UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>v.<br><br>FRED D. GODLEY, JR., 436 CONE AVENUE, LLC, and F.D. GODLEY NUMBER THREE, LLC,<br><br>            Defendants. | CIVIL ACTION NO.  3:19-cv-00202 |

## COMPLAINT

Plaintiff the United States of America ("United States"), by authority of the Attorney General of the United States, on behalf of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action against Defendants Fred D. Godley, Jr., 436 Cone Avenue, LLC, and F.D. Godley Number Three, LLC ("Defendants") pursuant to Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. § 9607(a), in connection with the release or threatened release of hazardous substances at the Pineville Textile Mill Site, located on Cone Avenue in Pineville, Mecklenburg County, North Carolina (hereafter "Pineville Site") and the Old Davis Hospital Site, located on West End Avenue, in Statesville, Iredell County, North Carolina (hereafter "Old Davis Site") (together, the "Facilities" or "Sites").

2.     The United States seeks judgment against Defendants for costs that the United States incurred to conduct response activities in connection with releases or threatened releases of hazardous substances into the environment at or from the Facilities pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a). The United States also seeks a declaratory judgment, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), declaring that Defendants will be liable for any further response costs or damages that the United States may incur with respect to the Facilities.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over the subject matter of this action and the parties hereto pursuant to 28 U.S.C. §§ 1331, 1345 and 1367, and 42 U.S.C. §§ 9607(a) and 9613(b).

4.     Venue is proper in the Western District of North Carolina pursuant to 42 U.S.C. § 9613(b) and 28 U.S.C. § 1391(b) and (c) because the Defendants reside, the Facilities are located, and the threatened and actual releases of hazardous substances that gave rise to the claims for costs associated with the Facilities occurred, within this judicial district.

## DEFENDANTS

5.     Fred D. Godley, Jr. ("Godley") is an individual and a "person" within the meaning of CERCLA Section 101(21), 42 U.S.C. § 9601(21).

6.     436 Cone Avenue, LLC ("Cone Ave") is a North Carolina limited liability corporation and a "person" within the meaning of CERCLA Section 101(21), 42 U.S.C. § 9601(21). Godley is its registered agent and sole manager.

7.     Cone Ave was administratively dissolved by the North Carolina Secretary of State on February 2, 2017, for failure to file its annual report.

8.      Under North Carolina General Statutes § 57D-6-12, a claim against Cone Ave as a dissolved LLC may be enforced to the extent of its undistributed assets or, if the assets have been distributed in liquidation, against Godley as the interest owner of Cone Ave in proportion to any distributions made to Godley following Cone Ave's dissolution.

9.      F.D. Godley Number Three, LLC ("GNT") is a North Carolina limited liability corporation and a "person" within the meaning of CERCLA Section 101(21), 42 U.S.C. § 9601(21). Godley is its registered agent and sole manager.

## STATUTORY BACKGROUND

### A.      CERCLA

10.     CERCLA was enacted in 1980 to provide a comprehensive governmental mechanism for abating releases and threatened releases of hazardous substances and other pollutants and contaminants and for funding the costs of such abatement and related enforcement activities, which are known as response actions. 42 U.S.C. §§ 9604(a), 9601(25).

11.     Section 104 of CERCLA, 42 U.S.C. § 9604, provides that whenever any hazardous substance is released into the environment, or there is a substantial threat of such a release into the environment, the President is authorized to act, consistent with the National Contingency Plan, to remove or arrange for the removal of, and provide for remedial action relating to, such hazardous substance.

12.     For CERCLA response actions and enforcement purposes, the Administrator of EPA is the President's delegate, as provided in operative Executive Orders, and, within certain limits, the Regional Administrators of EPA have been re-delegated this authority.

13.     Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), in relevant part, provides that:

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

. . . from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for –

(A) all costs of removal or remedial action incurred by the United States Government… not inconsistent with the national contingency plan.

14.     Section 113(g)(2)(B) of CERCLA, 42 U.S.C. § 9613(g)(2)(B), provides that in any action for recovery of costs under Section 107 of CERCLA, "the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages."

15.     Liability under Section 107(a) of CERCLA is joint and several.

16.     "Disposal" is defined as "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters." 42 U.S.C. §§ 9601(29); 6903(3).

17.     "Facility" is defined in CERCLA Section 101(9) as "any building, structure, installation, equipment, pipe or pipeline" or "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located . . . ." 42 U.S.C. § 9601(9).

18.     "Release" is defined in CERCLA Section 101(22) as "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment (including the abandonment or discarding of barrels, containers, and other closed receptacles containing any hazardous substance or pollutant or contaminant) . . . ." 42 U.S.C. § 9601(22).

19.     "Hazardous substance" is defined in CERCLA Section 101(14) by reference to other federal statutes and by reference to a list of substances published by EPA at 40 C.F.R. § 302.4. 42 U.S.C. § 9601(14). Asbestos and PCBs (polychlorinated biphenyls) are listed hazardous substances. 40 C.F.R. § 302.4.

20.     "Response," as defined in CERCLA Section 101(25), includes removal actions and enforcement activities related thereto. 42 U.S.C. § 9601(25).

**B.     Veil Piercing**

21.     Under North Carolina law, a court may disregard corporate form and pierce the veil between an interest owner, manager, or other company official and the LLC in certain situations to hold one liable for the debts of the other. Specifically, a plaintiff can reach property or funds belonging to an interest owner, manager, or other company official of a defendant LLC when the defendant LLC is a mere instrumentality or alter ego of the interest owner/manager/official. *S. Shores Realty Servs. v. Miller*, 796 S.E.2d 340, 351 (N.C. Ct. App. 2017).

22.     North Carolina law uses the "instrumentality rule," under which there are three elements which must be satisfied to set aside the corporate form: (1) complete domination or control such that the corporate entity has no separate mind, will, or existence of its own; (2) such control or domination is used to commit fraud or wrong, perpetrate violation of a statutory or other positive legal duty, or commit a dishonest and unjust act; and (3) such control and breach of duty must proximately cause the injury complained of. *Glenn v. Wagner*, 329 S.E.2d 326, 330 (N.C. 1985).

## GENERAL ALLEGATIONS

**A.**     **Pineville Site**

   ***i.***     ***Site Ownership and Operation History***

23.     The Pineville Site is located at 436 Cone Avenue, Pineville, Mecklenburg County, North Carolina. It was originally developed as a cotton mill in 1894, but milling operations ceased entirely in 1991.

24.     The Pineville Site consists of an approximately 28.3-acre parcel of land. The Site had buildings with asbestos-containing material and 40 to 50 abandoned drums and containers, at least 20 of which contained oil containing PCBs, a hazardous substance under CERCLA.

25.     On October 27, 1995, Godley purchased the Pineville Site from Pineville Mills, Inc. for $1.2 million.

26.     436 Cone Avenue, LLC was formed on April 1, 2010.

27.     On April 29, 2010, Godley transferred ownership of the Pineville Site to Cone Ave.

28.     At the Pineville Site, Cone Ave managed, directed, and conducted operations concerning the leakage and disposal of hazardous waste, compliance with environmental laws, and management of environmental liabilities.

29.     At the Pineville Site, Godley managed, directed, and conducted operations concerning the leakage and disposal of hazardous waste, compliance with environmental laws, and management of environmental liabilities.

30.     Beginning no later than 2013, Cone Ave and Godley undertook demolition activities at the Pineville Site.

31.     Cone Ave and Godley directed the demolition contractor, communicated with local, county, state, and federal agencies regarding management of the demolition wastes (including asbestos), initially refused EPA access to the Pineville Site to perform removal activities and instead stated that Cone Ave and/or Godley would undertake removal activities, hired an environmental contractor to dispose of the drums (unsuccessfully), and chose not to fully and properly abate the asbestos or dispose of the drums before transferring the site to the Town of Pineville.

### ii.     *Releases of Hazardous Substances and Governmental Response*

32.     Cone Ave's and Godley's demolition activities included the placement of asbestos-containing materials in stockpiles and the movement of improperly stored and leaking drums of PCB oil that had been abandoned by the prior milling operations.

33.     Asbestos debris from Cone Ave's and Godley's demolition activities was deposited, dumped, or placed in stockpiles throughout the Pineville Site.

34.     Twenty abandoned drums that contained PCBs, some of which were leaking, were located around the facility.

35.     In March, April, and May 2014, the Town of Pineville issued Notices of Violation ("NOVs") to Cone Ave for, *inter alia*, windblown debris resulting from Cone Ave and Godley's demolition activities, including insulation and sharp pieces of metal, which was blown across the unsecured Pineville Site and surrounding roadways and properties.

36.     In April 2014, Mecklenburg County issued a Stop Work Order to stop demolition at the Pineville Site. Cone Ave and Godley halted demolition activities for a time but left debris at the Pineville Site, allowing the debris to be blown into surrounding roadways and properties.

37.     In May 2014, officials from the North Carolina Department of Environment and Natural Resources ("NCDENR," now the North Carolina Department of Environmental Quality) and the Mecklenburg County Solid Waste Division visited the Pineville Site and met with Godley and a contractor who Godley hired to perform demolition activities at the Pineville Site. In a May 19, 2014, letter from NCDENR, Godley, as manager of Cone Ave, was ordered to correct the violation of solid waste rules and laws resulting from the demolition wastes within 60 days.

38.     Sampling of drums at the Pineville Site in May 2014 showed that PCBs were present.

39.     In July 2014, following up on the NOVs issued to Cone Ave since March 2014, the Town of Pineville filed a Verified Complaint and Motion for Injunction and Order of Abatement in state court against Cone Ave seeking payment of $32,000 in fines and alleging that, unless restrained or enjoined by the court, Cone Ave's continued violation of the Town's Zoning Ordinance would result in substantial and irreparable harm to the Town and its citizens.

40.     In August 2014, officials from NCDENR, Mecklenburg County, and the Town of Pineville inspected the Pineville Site and found no sign of compliance by Cone Ave and Godley with the May 19, 2014, letter.

41.     On August 27, 2014, NCDENR issued a Notice of Violation to both Cone Ave and Godley as an individual for violating the North Carolina Solid Waste Management Rules by having "arranged, via contract, a demolition project that resulted in solid waste being disposed of at a site or facility which is not permitted to receive the waste" and for having "allowed real property under its control, 436 Cone Avenue, Pineville, NC, to become a solid waste disposal facility without a permit from the Division."

42.     On August 28, 2014, NCDENR contacted EPA requesting support responding to the Pineville Site.

43.     In August 2014, EPA notified Godley by phone and email that tests showed that PCBs had been released at the Pineville Site.

44.     On August 29, 2014, EPA issued a Notice of Federal Interest to Godley informing him that EPA "has an interest in this incident and may conclude that a removal action is necessary to clean up or contain the release" and that, under CERCLA Section 107, liable parties may be requested to conduct the removal action or may be held financially responsible for EPA's costs if EPA conducts the removal action.

45.     Vandalism at the unsecured site around February or March 2015 resulted in at least one release of PCB oil onto the ground and into the environment.

46.     Beginning in August 2014 and through August 2015, EPA communicated multiple times with Godley to try to obtain access to the Pineville Site so that EPA could perform a removal action to address the release or threatened release of asbestos and PCBs. Godley repeatedly refused to provide EPA access for a removal action. He did not sign an access agreement until August 17, 2015, after EPA informed Godley that a unilateral administrative order for access would be issued; however, Godley orally revoked access on August 19, 2015.

47.     On September 17, 2015, EPA issued an Action Memorandum approving a Time-Critical Removal Action based on a finding that actual or threatened releases of hazardous substances from the Pineville Site may present an imminent and substantial endangerment to public health, welfare, or the environment.

### iii. *Transfer of Pineville Site*

48.     For tax purposes, Mecklenburg County in 2014 assessed the value of the Pineville Site as $5,828,600.

49.     In communications with EPA in 2014 and 2015, Godley stated that Cone Ave was unable to pay for complete cleanup and that the Pineville Site property was Cone Ave's only asset.

50.     On October 24, 2014, Cone Ave and Godley, in his individual capacity, together obtained a bank loan in the amount of $1,755,000 (with an initial advance amount of $1,436,877.95) that was secured by a deed of trust for the Pineville Site property.

51.     On October 30, 2015, Cone Ave and Godley, in his individual capacity, entered into an agreement with the Town of Pineville to transfer the Pineville Site to the Town. The agreement states that Cone Ave and Godley (referred to collectively as the "Donor" in the agreement) intended to claim the value of the Pineville Site as a noncash charitable deduction for tax purposes. Under the agreement, the Town agreed to pay the balance due on the deed of trust encumbering the property ($1,750,000); pay "back taxes in the approximate amount of $89,582 (2012), $5,266.20 (2013), $57,396.64 (2014), $1,170.80 (2012), $1,109.83 (2013), and $1,024.17 (2014), including any taxes attributable to the tax year of closing"; assume the estimated cost and fees and environmental cleanup costs in the approximate amount of $80,000 and any other action required by EPA or NCDENR; and dismiss or cancel the NOVs previously issued by the Town.

52.     The transfer of the Pineville Site left Cone Ave without its sole purported asset, which had an assessed value of $5,828,600 in 2014.

    *iv.*  <u>*Remaining Contamination*</u>

  53.  On December 21, 2015, Cone Ave transferred the Pineville Site to the Town of Pineville. At the time of the transfer, over two years after beginning demolition activities, Cone Ave and Godley had neither successfully abated the asbestos-containing materials nor properly disposed of these materials, the demolition debris, and the abandoned drums.

  54.  After receiving the Pineville Site property on December 21, 2015, the Town of Pineville City completed the removal and disposal of the containers and drums offsite with oversight from EPA. EPA then referred the Pineville Site back to the state/county for continued oversight for the remaining asbestos debris removal.

  55.  EPA's removal activities included performing a Removal Site Evaluation, sampling drum and tank contents, and monitoring cleanup activities undertaken by the Town of Pineville.

**B.**  <u>**Old Davis Site**</u>

  *i.*  <u>*Site Ownership and Operation History*</u>

  56.  The approximately five-acre Old Davis Site is located on West End Avenue, Statesville, Iredell County, North Carolina. It is the site of the Old Davis Hospital, also known as the old Statesville Hospital, which operated from 1920 into the 1980s, when it was closed.

  57.  GNT was formed on or around June 19, 1997.

  58.  On July 1, 1997, GNT purchased a parcel of property of approximately 8 acres (hereinafter "GNT Property Purchase"), including the Old Davis Site, for $25,000.

  59.  Godley supplied the capital for this purchase.

60.     In October 1999, GNT sold a portion of the GNT Property Purchase, totaling 0.7913 acres, to the Iredell/Statesville Community Enrichment Corp. Godley received the proceeds of this sale.

61.     In January 2000, GNT sold a portion of the GNT Property Purchase, totaling 1.5665 acres, to the Iredell/Statesville Community Enrichment Corp. Godley received the proceeds of this sale.

62.     In December 2008, GNT sold a portion of the GNT Property Purchase, totaling 0.559 acres, to Mitchell Community College ("MCC"). Godley received the proceeds of this sale.

63.     The remaining portion of the GNT Property Purchase comprises the Old Davis Site and contained several structures, including the hospital building.

64.     At the Old Davis Site, GNT managed, directed, and conducted operations concerning the leakage and disposal of hazardous waste, compliance with environmental laws, and management of environmental liabilities.

65.     At the Old Davis Site, Godley managed, directed, and conducted operations concerning the leakage and disposal of hazardous waste, compliance with environmental laws, and management of environmental liabilities.

66.     GNT and Godley directed a demolition contractor (the same one previously used by Cone Ave and Godley at the Pineville Site) to demolish structures at the Old Davis Site, hired an individual who was not currently accredited for asbestos inspections to purportedly perform asbestos inspections of certain areas (the same individual previously used by Godley to inspect other facilities, and who also was unaccredited at the time of those inspections), communicated with local, county, and federal agencies regarding asbestos and demolition wastes, chose not to

– 12 –

fully and properly abate asbestos, and initially refused EPA access to the site to perform removal activities.

67. During the summer of 2009, the City of Statesville had the Old Davis Site professionally surveyed for asbestos removal and obtained an estimate of $880,000 for asbestos removal and building demolition at the site.

68. The City thereafter notified GNT and/or Godley of the presence of asbestos at the Old Davis Site, and the estimated $880,000 cost of removing it and demolishing the buildings.

69. On November 14, 2012, Godley met officials from the City of Statesville, the Statesville Fire Department, and Iredell County on a walk-through of the hospital structures, during which asbestos-containing material was specifically pointed out to Godley, asbestos dust was visible throughout, and Godley was told that the estimated cost of asbestos abatement was $1 million to $1.2 million.

70. On March 24, 2015, GNT entered into a Contract for Purchase and Sale with the Board of Trustees of Mitchell Community College ("BOTMCC"), whereby the BOTMCC agreed to pay GNT $404,000 to purchase the Old Davis Site in addition to securing the waiver of Iredell County dumping fees for demolition debris from the site. The agreement was contingent on GNT's demolition and removal of all structures on the site, and the closing was set for no later than October 11, 2015. Godley signed the agreement on behalf of GNT.

71. The structures on the Old Davis Site were not demolished and removed prior to October 11, 2015, and the sale referenced in the above paragraph was never completed.

72. In January 2016, GNT agreed to donate the Old Davis Site to MCC as soon as all structures had been demolished, all debris removed, and the property was environmentally clean. Pursuant to this Real Property Donation Agreement, MCC agreed to reimburse GNT $404,000

for demolition, clean up, and debris removal, less $50,000 advanced by Mitchell Community College Endowment for Excellence ("MCCEE") under a separate Loan Agreement and Modification of Offer to Purchase and Contract ("Loan Agreement") between MCC, MCCEE, and GNT, with an Escrow Agreement between GNT and MCCEE and North Carolina Deed of Trust between grantor GNT, Trustee William P. Pope, Esq., and Beneficiary MCCEE. Godley signed the Real Property Donation Agreement, Loan Agreement, Escrow Agreement, Purchase Money Promissory Note, and Deed of Trust on behalf of GNT.

73.     The Old Davis Site was not donated to MCC.

***ii.     Releases of Hazardous Substances and Governmental Responses***

74.     Demolition activities at the Old Davis Site began on or around July 2015.

75.     On September 22, 2015, the North Carolina Health Hazards Control Unit ("NCHHCU"), which implements the state asbestos abatement program in North Carolina, inspected the Old Davis Site in response to a complaint.

76.     On October 7, 2015, EPA Region 4 received a National Response Center ("NRC") notification of potential improper demolition activities and possible release of friable asbestos at the Site into the atmosphere, affecting nearby residents.

77.     EPA immediately notified NCHHCU and provided it with the information received from the NRC.

78.     In October 2015, at least one official from NCHHCU and the Iredell County Building Inspector observed asbestos-containing materials at the Old Davis Site, including at least two piles of asbestos-containing debris. Sampling by NCHHCU confirmed the debris piles contained as much as 75% chrysotile and 20% amosite, which are both varieties of asbestos.

79. On November 4, 2015, NCHHCU sent a letter to Godley and the demolition contractor informing them of the presence of asbestos-containing materials at the Old Davis Site within the main hospital building and in the demolition debris outside the building; notifying them of the regulatory requirements associated with the demolition of potentially asbestos-containing structures; and ordering that they cease further demolition, site debris cleanup, and other activities that would disturb the regulated asbestos-containing materials ("RACM") at the site until the site was thoroughly inspected by a North Carolina Accredited Asbestos Inspector.

80. On March 2, 2016, NCHHCU issued a Notice of Violation to Godley and the demolition contractor. The NOV stated that RACM had been disturbed or created during demolition activities conducted by unaccredited personnel without proper controls at the Old Davis Site. The NOV further directed that (1) a thorough investigation and inventory of suspected asbestos-containing materials be performed by an accredited asbestos inspector; (2) an asbestos abatement design be developed and submitted for review prior to beginning cleanup or demolition activities; (3) a project monitoring plan for the asbestos removal and cleanup be submitted to NCHHCU for review prior to cleanup or removal/demolition activities; (4) cleanup should be performed by North Carolina accredited personnel in accordance with applicable state and federal regulations; and (5) cleanup should be completed as quickly as possible because the condition of the site posed both health and safety concerns.

81. On June 1, 2016, EPA secured verbal access from Godley and/or GNT to conduct a site visit.

82. On June 2, 2016, an EPA official conducted a site visit at the Old Davis Site with at least one official from NCHHCU and Godley. The EPA official observed that asbestos had been deposited, dumped, or placed in areas throughout the Old Davis Site, including in two large

demolition debris piles near the main building at the site. The two piles were each estimated to be approximately 100 feet long by 150 feet wide by 10 feet high. The EPA official also observed that the site was inadequately secured and was located immediately adjacent to a community college and residential structures.

83.     On June 6, 2016, the North Carolina Department of Environmental Quality, in coordination with the North Carolina Department of Health and Human Services, requested that EPA conduct a Removal Site Evaluation at the Old Davis Site and take action as necessary and appropriate to facilitate mitigation of potential threats associated with asbestos-containing demolition debris located on the property.

84.     Also on June 6, 2016, the NCHHCU sent a letter to EPA expressing a public health concern due to conditions at the Site.

85.     On June 6, 2016, an official from EPA spoke with Godley to obtain access to the Old Davis Site for a time-critical removal action. Godley refused to grant EPA access.

86.     On June 7, 2016, Godley agreed to grant EPA limited access to the Old Davis Site for site stabilization purposes only.

87.     On June 7, 2016, after being granted access, EPA commenced site stabilization and monitoring activities at the Old Davis Site.

88.     On June 21, 2016, Godley, on behalf of GNT, finally granted EPA access to the Old Davis Site to conduct the full time-critical removal action.

89.     On June 30, 2016, EPA issued an Action Memorandum approving a Time-Critical Removal Action based on a finding that the actual or threatened releases of hazardous substances from the Old Davis Site may present an imminent and substantial endangerment to public health, welfare, or the environment.

90.     EPA's on-site removal activities continued through September 1, 2016 and included, *inter alia*, air and soil sampling, water misting, security fencing and signage, removal and disposal of asbestos-contaminated demolition debris, and cleaning the footprints of collapsed buildings and associated soils. In total, more than 145 shipments of almost 4,000 tons of asbestos-contaminated waste was transported to approved asbestos landfills.

### iii.     *Tax Foreclosure of Old Davis Site*

91.     On September 26, 2016, EPA filed a Notice of Federal Lien with the Iredell County Register of Deeds stating that the United States holds a lien on the Old Davis Site pursuant to Section 107(*l*) of CERCLA, 42 U.S.C. § 9607(*l*), to secure payment for the United States' unreimbursed CERCLA response costs relating to the site and for which GNT is liable pursuant to 42 U.S.C. § 9607(a). As of November 18, 2016, EPA had incurred $1,313,161.61 in unreimbursed response costs, not including interest, for response activities at the Old Davis Site.

92.     GNT failed to pay its 2011, 2012, 2013, 2014, and 2015 county property taxes.

93.     Together with interest, this tax liability totaled $45,441.66 as of October 13, 2016.

94.     On November 4, 2016, Iredell County commenced a property tax foreclosure proceeding for the Old Davis Site entitled *Iredell County v. FD Godley Number Three, LLC et al*, Case No. 16 CVD 2698 (hereafter "Old Davis Foreclosure").

95.     At the time of commencement of the Old Davis Foreclosure, four additional judgment liens in favor of the City of Statesville against GNT, totaling $5,633.97, were secured by the Old Davis Site.

96.     On May 30, 2017, the remaining portion of the Old Davis Site under GNT's ownership was sold at a tax foreclosure sale to Mitchell Community College Property Group, LLC ("MCCPG") for $46,296.00.

97. At the time of foreclosure, all of the debts referenced in paragraphs 72, 91, and 95, above, remained unpaid.

98. The foreclosure of the Old Davis Site left GNT without its sole asset, which Iredell County valued at $461,090 in 2017.

99. On May 5, 2018, MCCPG transferred the Old Davis Site to BOTMCC.

C. **Veil Piercing**

i. ***Godley and Cone Ave: Liability for EPA's Response Costs Incurred at the Pineville Site***

100. Godley has control and/or complete domination of Cone Ave such that Cone Ave has no separate mind, will, or existence of its own.

    a. Godley owns 99% of Cone Ave.

    b. Godley Realty Company, Inc. ("Godley Realty Co." owns 1% of Cone Ave.

    c. Godley is the President and sole officer listed for Godley Realty Co.

    d. Godley is the sole manager of Cone Ave.

    e. Godley exerts control over the activities of Cone Ave.

    f. Godley is the registered agent of Cone Ave.

    g. Cone Ave's address is the same as Godley's residential address.

    h. Cone Ave periodically fails to file required submissions with the North Carolina Secretary of State, including its 2014 annual report, which resulted in its administrative dissolution in February 2015, and – following its reinstatement in November 2015 – its 2016 annual report, which resulted in its administrative dissolution in February 2017.

– 18 –

i.     During the period of administrative dissolution from February 2015 through November 2015, Godley continued conducting business on Cone Ave's behalf despite Cone Ave being administratively dissolved.

j.     Cone Ave has no employees.

k.     Cone Ave and Godley, together, borrowed $1,755,500 through a bank loan that was secured by the Pineville Site property.

l.     Cone Ave was kept on the brink of insolvency as a result of Godley's decisions. Although the Pineville Site property was Cone Ave's only purported asset, Godley failed to pay property taxes after 2012, failed to defend the property against tax foreclosure, created and maintained the conditions that gave rise to environmental liabilities, and transferred the property to the Town of Pineville.

m.     Godley is the sole decisionmaker in charge of Cone Ave's finances, operations, and business practices—including its operations relating to hazardous waste and its environmental compliance decisions.

n.     Outside parties perceive Godley as the sole decisionmaker in charge of Cone Ave's finances, operations, and business practices.

o.     Godley, or someone at Godley's direction, provided the information to respond to EPA's requests for information to Cone Ave pursuant to CERCLA Section 104(e), 42 U.S.C. § 9604(e).

101.     Godley had knowledge of Cone Ave's actual and potential environmental liabilities related to asbestos and PCBs at the Pineville Site, which included Cone Ave's liability under CERCLA Section 107(a)(2), 42 U.S.C. § 9607(a)(2).

102.     Godley kept Cone Ave undercapitalized, including, based on his representations to EPA and upon information and belief, failing to make the proceeds of a October 2014 $1,755,000 bank loan to Cone Ave and Godley, which was secured by the Pineville Site, available to Cone Ave to fund Cone Ave's obligations to clean up the site; and transferring Cone Ave's purported sole asset, the Pineville Site, in a transaction that provided no cash to Cone Ave, despite the Pineville Site having an assessed value of $5,828,600 in 2014.

103.     Cone Ave had insufficient assets to pay for cleanup of the Pineville Site and has insufficient assets to pay EPA's response costs. Godley repeatedly represented to EPA that Cone Ave lacked the ability to pay for complete cleanup of the Pineville Site, including informing EPA in July 2015 that Cone Ave no longer had funds to perform further cleanup activities and informing the EPA on-scene coordinator in August 2015 that he had not disposed of the drums containing PCBs because he had received a quote of $80,000 for disposal and he did not have the money.

104.     By keeping Cone Ave undercapitalized, Godley ensured that Cone Ave would not have sufficient assets to clean up the Pineville Site or pay EPA's response costs.

105.     Godley's undercapitalization of Cone Ave is the proximate cause of EPA's inability to recover from Cone Ave its response costs incurred in connection with the Pineville Site, which total approximately $304,060.60 as of March 31, 2019.

106.     An inequitable result will follow from recognizing a distinction in identity between Cone Ave and Godley.

    ii.     ***Godley and GNT: Liability for EPA's Response Costs Incurred at the Old Davis Site***

107.     Godley has control and/or complete domination of GNT such that GNT has no separate mind, will, or existence of its own.

a. Godley owns 99% of GNT.

b. Godley Realty Co. owns 1% of GNT.

c. Godley is the President and sole officer listed for Godley Realty Co.

d. Godley is the sole manager of GNT.

e. Godley exerts control over the activities of GNT.

f. Godley is the registered agent of GNT.

g. GNT's address is the same as Godley's residential address.

h. GNT periodically fails to file required submissions with the North Carolina Secretary of State, including its 2002, 2003, and 2004 annual reports, which resulted in its administrative dissolution in 2005, and – following its reinstatement in 2008 – failed to file its 2011 and 2012 annual reports, which resulted in its administrative dissolution in 2013. It was reinstated in 2018, but as of April 19, 2019, had not yet filed its 2018 annual report.

i. During the period of administrative dissolution from 2013 through 2018, Godley continued conducting business on GNT's behalf despite GNT being administratively dissolved.

j. GNT has no employees.

k. GNT has no bank account.

l. Godley provided the information to respond to EPA's request for information to GNT pursuant to CERCLA Section 104(e), 42 U.S.C. § 9604(e).

m.  Other than the Old Davis Site and its associated properties and sales thereof, described below, GNT has had no separate income or assets aside from what was provided to GNT by Godley.

n.  All profits received by GNT were passed through to Godley.

o.  Godley supplied the capital expended by GNT for, among other things, the purchase of the Old Davis Site and its associated properties.

p.  GNT was kept on the brink of insolvency as a result of Godley's decisions. Although the Old Davis Site property was GNT's only purported asset, Godley failed to pay property taxes, failed to defend the property against tax foreclosure, failed to pay GNT's debts to the City of Statesville, failed to insure the property, created and maintained the conditions that gave rise to environmental liabilities, obtained a $50,000 loan payable to GNT – while GNT was administratively dissolved – that was secured by the property, and ultimately allowed the property to be sold pursuant to a foreclosure order.

q.  Godley is the sole decisionmaker in charge of GNT's finances, operations, and business practices—including operations relating to hazardous waste and environmental compliance decisions.

r.  Outside parties perceive Godley as the sole decisionmaker in charge of GNT's finances, operations, and business practices.

108.  Godley had knowledge of GNT's actual and potential environmental liabilities related to asbestos at the Old Davis Site. These liabilities were at least hundreds of thousands of dollars based on the estimated cost of asbestos removal and building demolition described in

paragraph 63 and included GNT's liability for EPA's costs under CERCLA Section 107(a)(2), 42 U.S.C. § 9607(a)(2).

109.    Godley kept GNT undercapitalized, including failing to defend GNT's sole asset, the Old Davis Site, from being sold in May 2017 in a tax foreclosure proceeding.

110.    GNT had insufficient assets to pay for cleanup of the Old Davis Site and has insufficient assets to pay EPA's response costs.

111.    By keeping GNT undercapitalized, Godley ensured that GNT would not have sufficient assets to clean up the Old Davis Site or pay EPA's response costs.

112.    Godley's undercapitalization of GNT is the proximate cause of EPA's inability to recover from GNT its response costs incurred in connection with the Old Davis Site, which total approximately $1,605,173.66 as of April 11, 2019.

113.    An inequitable result will follow from recognizing a distinction in identity between GNT and Godley.

## SPECIFIC ALLEGATIONS

**A.    Pineville Site**

114.    Asbestos and PCBs are hazardous substances within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), because they are listed at 40 C.F.R. § 302.4 pursuant to Section 102 of CERCLA, 42 U.S.C. § 9602.

115.    Asbestos and PCBs came to be located at the Pineville Site.

116.    The Pineville Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9) because it is a site or area where hazardous substances have been "deposited, stored, disposed of, or placed, or otherwise come to be located."

117. There was a "release" or a threatened "release" of hazardous substances into the "environment" at or from the Pineville Site, within the meaning of Sections 101(8) and 101(22) of CERCLA, 42 U.S.C. §§ 9601(8) and 9601(22), because asbestos was detected in the air and PCBs were detected in abandoned drums and in the soil throughout the Pineville Site.

118. Asbestos and PCBs were dumped, spilled and/or placed at the site and thus "disposed" at the site, within the meaning of CERCLA Section 101(29), 42 U.S.C. § 9601(29), and 42 U.S.C. § 6903(3).

119. Cone Ave owned the Pineville Site at the time of disposal of hazardous substances.

120. Cone Ave operated the Pineville Site at the time of disposal of hazardous substances.

121. Godley operated the Pineville Site at the time of disposal of hazardous substances.

122. In undertaking response actions to address the release and threatened release of hazardous substances at the Pineville Site, EPA has incurred "response" costs as defined in Section 101(25) of CERCLA, 42 U.S.C. § 9601(25).

123. As of March 31, 2019, EPA had incurred unreimbursed costs of approximately $ 304,060.60, not including interest, for the Pineville Site.

124. EPA's response actions taken at or in connection with the Pineville Site and the costs incurred incident thereto were not inconsistent with the National Contingency Plan.

**B.** **Old Davis Site**

125. Asbestos is a hazardous substance within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), because it is listed at 40 C.F.R. § 302.4 pursuant to Section 102 of CERCLA, 42 U.S.C. § 9602.

126.    Asbestos came to be located at the Old Davis Site.

127.    The Old Davis Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9) because it is a site or area where hazardous substances have been "deposited, stored, disposed of, or placed, or otherwise come to be located."

128.    There was a "release" or a threatened "release" of hazardous substances into the "environment" at or from the Old Davis Site, within the meaning of Sections 101(8) and 101(22) of CERCLA, 42 U.S.C. §§ 9601(8) and 9601(22), because the hazardous substances described in paragraphs 125 through 126 were detected in the soil and debris piles at the Old Davis Site.

129.    Hazardous substances including asbestos were dumped, spilled and/or placed at the site and thus "disposed" at the site, within the meaning of CERCLA Section 101(29), 42 U.S.C. § 9601(29), and 42 U.S.C. § 6903(3).

130.    GNT owned the Old Davis Site at the time of disposal of hazardous substances.

131.    GNT operated the Old Davis Site at the time of disposal of hazardous substances.

132.    Godley operated the Old Davis Site at the time of disposal of hazardous substances.

133.    In undertaking response actions to address the release and threatened release of hazardous substances at the Old Davis Site, EPA has incurred "response" costs as defined in Section 101(25) of CERCLA, 42 U.S.C. § 9601(25).

134.    As of April 11, 2019, EPA had incurred unreimbursed costs of approximately $1,605,173.66, not including interest, for the Old Davis Site.

135.    EPA's response actions taken at or in connection with the Old Davis Site and the costs incurred incident thereto were not inconsistent with the National Contingency Plan.

## FIRST CLAIM FOR RELIEF
### (Recovery of Response Costs for the Pineville Site from Cone Ave)

136.    Paragraphs 1 through 135 are realleged and incorporated by reference.

137.    Hazardous substances have been released at or from the Pineville Site into the environment within the meaning of CERCLA Sections 101 and 107, 42 U.S.C. §§ 9601, 9607.

138.    Cone Ave owned the Pineville Site at the time of disposal of hazardous substances at the Pineville Site.

139.    Cone Ave operated the Pineville Site at the time of disposal of hazardous substances at the Pineville Site.

140.    Pursuant to CERCLA Section 107(a), 42 U.S.C. § 9607(a), Cone Ave is jointly and severally liable to the United States for all response costs incurred by the United States in connection with the Pineville Site.

141.    Pursuant to CERCLA Section 113(g)(2), 42 U.S.C. § 9613(g)(2), a declaratory judgment on liability for response costs or damages should be entered against Cone Ave that will be binding in any subsequent action or actions seeking to recover further response costs or damages incurred by the United States in connection with the Pineville Site.

## SECOND CLAIM FOR RELIEF
### (Recovery of Response Costs for the Pineville Site from Godley)

142.    Paragraphs 1 through 135 are realleged and incorporated by reference.

143.    Hazardous substances have been released at or from the Pineville Site into the environment within the meaning of CERCLA Sections 101 and 107, 42 U.S.C. §§ 9601, 9607.

144.    Godley operated the Pineville Site at the time of disposal of hazardous substances at the Pineville Site.

145. Through veil-piercing, Godley is also personally liable for Cone Ave's liability under the First Claim for Relief because Godley dominates and controls Cone Ave to the extent that it has no separate mind, will, or existence of its own; Godley, through his control of Cone Ave, kept Cone Ave undercapitalized; and this undercapitalization is the proximate cause of Cone Ave's inability to reimburse EPA's response costs. An inequitable result will occur unless their separate identities are disregarded.

146. Pursuant to CERCLA Section 107(a), 42 U.S.C. § 9607(a), Godley is jointly and severally liable to the United States for all costs incurred by the United States in connection with the Pineville Site.

147. Pursuant to CERCLA Section 113(g)(2), 42 U.S.C. § 9613(g)(2), a declaratory judgment on liability for response costs or damages should be entered against Godley that will be binding in any subsequent action or actions seeking to recover further response costs or damages incurred by the United States in connection with the Pineville Site.

**THIRD CLAIM FOR RELIEF**
**(Recovery of Response Costs for the Old Davis Site from GNT)**

148. Paragraphs 1 through 135 are realleged and incorporated by reference.

149. Hazardous substances have been released at or from the Old Davis Site into the environment within the meaning of CERCLA Sections 101 and 107, 42 U.S.C. §§ 9601, 9607.

150. GNT owned the Old Davis Site at the time of disposal of hazardous substances at the Old Davis Site.

151. GNT operated the Old Davis Site at the time of disposal of hazardous substances at the Old Davis Site.

– 27 –

152.     Pursuant to CERCLA Section 107(a), 42 U.S.C. § 9607(a), GNT is jointly and severally liable to the United States for all response costs incurred by the United States in connection with the Old Davis Site.

153.     Pursuant to CERCLA Section 113(g)(2), 42 U.S.C. § 9613(g)(2), a declaratory judgment on liability for response costs or damages should be entered against GNT that will be binding in any subsequent action or actions seeking to recover further response costs or damages incurred by the United States in connection with the Old Davis Site.

## FOURTH CLAIM FOR RELIEF
### (Recovery of Response Costs for the Old Davis Site from Godley)

154.     Paragraphs 1 through 135 are realleged and incorporated by reference.

155.     Hazardous substances have been released at or from the Old Davis Site into the environment within the meaning of CERCLA Sections 101 and 107, 42 U.S.C. §§ 9601, 9607.

156.     Godley operated the Old Davis Site at the time of disposal of hazardous substances at the Old Davis Site.

157.     Through veil-piercing, Godley is also personally liable for GNT's liability under the Third Claim for Relief because Godley dominates and controls GNT to the extent that it has no separate mind, will, or existence of its own; Godley, through his control of GNT, kept GNT undercapitalized; and this undercapitalization is the proximate cause of GNT's inability to reimburse EPA's response costs. An inequitable result will occur unless their separate identities are disregarded.

158.     Pursuant to CERCLA Section 107(a), 42 U.S.C. § 9607(a), Godley is jointly and severally liable to the United States for all costs incurred by the United States in connection with the Old Davis Site.

159.     Pursuant to CERCLA Section 113(g)(2), 42 U.S.C. § 9613(g)(2), a declaratory judgment on liability for response costs or damages should be entered against Godley that will be binding in any subsequent action or actions seeking to recover further response costs or damages incurred by the United States in connection with the Old Davis Site.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

(1)     Enter judgment in favor of Plaintiff against Defendants Godley and Cone Ave, jointly and severally, for all response costs incurred by Plaintiff relating to the Pineville Site, including enforcement costs and prejudgment interest, pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a);

(2)     Enter a declaratory judgment in favor of Plaintiff against Defendants Godley and Cone Ave, jointly and severally, for response costs incurred by Plaintiff in the future relating to the Pineville Site, including enforcement costs and interest, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2);

(3)     Enter judgment in favor of Plaintiff against Defendants Godley and GNT, jointly and severally, for all response costs incurred by Plaintiff relating to the Old Davis Site, including enforcement costs and prejudgment interest, pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a);

(4)     Enter a declaratory judgment in favor of Plaintiff against Defendants Godley and GNT, jointly and severally, for all response costs incurred by Plaintiff in the future relating to the Old Davis Site, including enforcement costs and interest, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2);

(5)     Award Plaintiff the costs of this action; and

(6)     Grant such other and further relief as this Court may deem just and proper.

Respectfully submitted,
FOR THE UNITED STATES OF AMERICA

R. ANDREW MURRAY
UNITED STATES ATTORNEY


 s/ Gill P. Beck
Gill P. Beck
Assistant United States Attorney
Chief, Civil Division
N.C. State Bar No. 13175
Room 233, U.S. Courthouse
100 Otis Street
Asheville, North Carolina 28801
(828) 271-4661
Gill.Beck@usdoj.gov


 s/ Ellen M. Mahan
ELLEN M. MAHAN
Deputy Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice


 s/ Rachael Amy Kamons
Rachael Amy Kamons
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Member of Maryland State Bar
P.O. Box 7611
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 514-5260
Facsimile: (202) 616-2427
Email: rachael.kamons@usdoj.gov

s/ Angela Mo
                                        Angela Mo
                                        Trial Attorney
                                        Environmental Enforcement Section
                                        Environment and Natural Resources Division
                                        U.S. Department of Justice
                                        Calif. State Bar No. 262113
                                        P.O. Box 7611
                                        Ben Franklin Station
                                        Washington, DC 20044
                                        Telephone: (202) 514-1707
                                        Facsimile: (202) 616-2427
                                        Email: angela.mo@usdoj.gov

JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

United States of America

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Rachael Amy Kamons, U.S. Dept. of Justice, ENRD EES, P.O. Box 7611, Washington, DC 20044-7611, (202) 514-5260

**DEFENDANTS**

Fred D. Godley, Jr., 436 Cone Avenue, LLC, and F.D. Godley Number Three, LLC

County of Residence of First Listed Defendant   Mecklenburg
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

---

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

☒ 1   U.S. Government
       Plaintiff

☐ 2   U.S. Government
       Defendant

☐ 3   Federal Question
       *(U.S. Government Not a Party)*

☐ 4   Diversity
       *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                          *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

---

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*                                Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☒ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

---

**V. ORIGIN** *(Place an "X" in One Box Only)*

☒ 1   Original
       Proceeding

☐ 2   Removed from
       State Court

☐ 3   Remanded from
       Appellate Court

☐ 4   Reinstated or
       Reopened

☐ 5   Transferred from
       Another District
       *(specify)*

☐ 6   Multidistrict
       Litigation -
       Transfer

☐ 8   Multidistrict
       Litigation -
       Direct File

---

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. 9607(a) and 9613(g)(2)

Brief description of cause:
CERCLA civil action to recover response costs incurred and declaratory judgment for future costs

**VII. REQUESTED IN COMPLAINT:**

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:   ☐ Yes   ☒ No

**VIII. RELATED CASE(S) IF ANY**

*(See instructions):*

JUDGE

DOCKET NUMBER

---

DATE
04/29/2019

SIGNATURE OF ATTORNEY OF RECORD
s/ Rachael Amy Kamons

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

Case 3:19-cv-00202   Document 1-1   Filed 04/29/19   Page 1 of 1