UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:19-cv-00202-RJC-DSC

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FRED D. GODLEY, JR., 436 CONE )<br>AVENUE, LLC, and F.D. GODLEY )<br>NUMBER THREE, LLC, )<br>)<br>Defendants/Third-Party )<br>Plaintiffs, )<br>)<br>v. )<br>)<br>TOWN OF PINEVILLE, NC, an )<br>incorporated municipality, IREDELL )<br>COUNTY, an incorporated municipality, )<br>MITCHELL COMMUNITY COLLEGE, a )<br>constituent institution of the North )<br>Carolina Community College System, and )<br>MITCHELL COMMUNITY COLLEGE )<br>FOUNDATION AND ENDOWMENT FOR )<br>EXCELLENCE, a non-profit corporation, )<br>)<br>Third-Party Defendants. ) | <u>ORDER</u> |

**THIS MATTER** comes before the Court on the United States of America's (the "Government") motion to strike. (Doc. No. 25.)

I.  BACKGROUND

The Government filed this action pursuant to section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a), to recover response costs it incurred at two sites in

Pineville and Statesville, North Carolina. In turn, Defendants Fred D. Godley, Jr., 436 Cone Avenue, LLC ("Cone Ave"), and F.D. Godley Number Three, LLC ("GNT") filed a third-party complaint pursuant to section 113(f) of CERCLA seeking contribution from other parties whom they allege are liable for the Government's response costs. (Doc. No. 16.) In addition, each Defendant filed an amended answer to the Government's complaint in which they assert twenty affirmative defenses. (Doc. Nos. 18, 19, 20.) The Government moves to strike seventeen of those defenses, as well as Defendants' jury demand. (Doc. No. 25.) The motion has been fully briefed and is ripe for adjudication.

## II. STANDARD OF REVIEW

Rule 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Rule 12(f) motions are generally viewed with disfavor 'because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic.'" Waste Mgmt. Holdings v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001) (quoting 5A Charles Alan Wright et al., Federal Practice & Procedure § 1380 (2d ed. 1990)). That being said, "a defense that might confuse the issues in the case and would not, under the facts alleged, constitute a valid defense to the action can and should be deleted." Id. (quoting Federal Practice & Procedure § 1380). In those circumstances, motions to strike "prevent the litigation of unnecessary issues and expedite the proceedings." Staton v. N. State Acceptance, LLC, No. 1:13-cv-277, 2013 U.S. Dist. LEXIS 105599, at *4 (M.D.N.C. July 29, 2013) (quotation marks and

2

citations omitted). "When reviewing a motion to strike, the court must view the pleading under attack in a light most favorable to the pleader." Racick v. Dominion Law Assocs., 270 F.R.D. 228, 232 (E.D.N.C. 2010) (quotation marks omitted). District courts have broad discretion in disposing of motions to strike. Hill v. Robeson Cty., 733 F. Supp. 2d 676, 690 (E.D.N.C. 2010).

III. DISCUSSION

    A. CERCLA Overview

CERCLA's statutory scheme is critical to determining the sufficiency and materiality of Defendants' asserted defenses. "In 1980, CERCLA was enacted in response to the serious environmental and health risks posed by industrial pollution." United States v. Bestfoods, 524 U.S. 51, 55 (1998). "The Act was designed to promote the timely cleanup of hazardous waste sites and to ensure that the costs of such cleanup efforts were borne by those responsible for the contamination." Burlington N. & Sante Fe Ry. v. United States, 556 U.S. 599, 602 (2009) (quotation marks omitted). In furtherance of that effort, "CERCLA empowers the federal government and the states to initiate comprehensive cleanups and to seek recovery of expenses associated with those cleanups." Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc., 596 F.3d 112, 120 (2d Cir. 2010).

"Section 107(a) of the statute sets forth the principal mechanism for recovery of costs expended in the cleanup of waste disposal facilities." United States v. Monsanto Co., 858 F.2d 160, 167 (4th Cir. 1988). To recover response costs under section 107(a), the Government must show: "(1) that the defendant owned or operated

3

a facility from which there was a release or threatened release of a hazardous substance, (2) that the defendant is a potentially responsible person, and (3) that the [Government] incurred necessary cleanup costs consistent with the national contingency plan." Westfarm Assocs. Ltd. P'ship v. Wash. Suburban Sanitary Comm'n, 66 F.3d 669, 677 (4th Cir. 1995) (quotation marks omitted); see also 42 U.S.C. § 9607(a). As to the second element, section 107(a) identifies four classes of potentially responsible persons ("PRPs") liable for costs incurred in responding to a release or threatened release of hazardous substances at a facility: "(1) the current owner or operator of a facility; (2) any person who owned or operated the facility at the time of disposal of a hazardous substance; (3) any person who arranged for disposal or treatment of hazardous substances at the facility; and (4) any person who accepts hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites." PCS Nitrogen Inc. v. Ashley II of Charleston LLC, 714 F.3d 161, 172 (4th Cir. 2013) (quotation marks omitted); see also 42 U.S.C. § 9607(a)(1)–(4). PRPs "under CERCLA are strictly liable for cleanup costs." Westfarm Assocs., 66 F.3d at 677. As a result, "[t]he traditional tort concept of causation plays little or no role in [section 107(a)'s] liability scheme. A party seeking to establish liability under CERCLA need not even show a specific PRP's waste caused cleanup costs." Chevron, 596 F.3d at 131. "Once an entity is identified as a PRP, it may be compelled to . . . reimburse the Government for its past and future response costs." Burlington, 556 U.S. at 609.

Pursuant to section 107(a)'s express terms, liability thereunder is subject only

4

to the defenses set forth in section 107(b). 42 U.S.C. § 9607(a); see also PCS Nitrogen, 714 F.3d at 172 ("A PRP's strict liability for response costs is subject only to CERCLA's limited defenses and exemptions."). The defenses set forth in section 107(b) are that the release or threatened release of hazardous substances and resulting damages were caused solely by (1) an act of God, (2) an act of war, (3) an act of a third party unconnected to defendant, or (4) any combination thereof. 42 U.S.C. § 9607(b)(1)–(4). The Fourth Circuit has described the third-party defense set forth in section 107(b)(3) as "a limited affirmative defense based on the complete absence of causation." Monsanto, 858 F.2d at 168. To establish the third-party defense, defendant must show by a preponderance of the evidence: "(1) that another party was the sole cause of the release of hazardous substances and the damages caused thereby; (2) that the other, responsible party did not cause the release in connection with a contractual, employment, or agency relationship with the defendant; and (3) that the defendant exercised due care and guarded against the foreseeable acts or omissions of the responsible party." Westfarm Assocs., 66 F.3d at 682 (quotation marks omitted) (citing 42 U.S.C. § 9607(b)(3)); accord Niagara Mohawk Power Corp. v. Jones Chem., 315 F.3d 171, 177 (2d Cir. 2003).

With this background, the Court turns to Defendants' asserted defenses.

### B. Third-Party Defense (Fourth Affirmative Defense)

Defendants' fourth affirmative defense states:

> Any alleged release or alleged threatened release of a hazardous substance and the damages allegedly resulting therefrom—at both sites—were caused solely by one or more actions or omissions of a third party or parties, whose actions or omissions did not occur in connection

5

> with a contractual relationship directly or indirectly with the Defendant. At all times, Defendant exercised due care and took precautions against foreseeable actions or omission [sic] of third parties.

(Doc. No. 18, at 24; Doc. No. 19, at 24; Doc. No. 20, at 24.) Defendants clearly attempt to assert the third-party defense set forth in section 107(b)(3). The Government argues that Defendants' fourth defense is insufficient as a matter of law because it fails to state that the third party was not an employee or agent of Defendants.

As discussed above, the third-party defense requires defendant to establish that the release or threatened release of hazardous substances and resulting damages were caused solely by a third party who was neither (a) an employee or agent of defendant nor (b) in a contractual relationship with defendant. 42 U.S.C. § 9607(b)(3). Because Defendants' fourth defense states only that the third party was not in a contractual relationship with Defendants but fails to state that the third party was not an employee or agent of Defendants, the defense is insufficient as a matter of law. See United States v. Sensient Colors, Inc., 580 F. Supp. 2d 369, 383 (D.N.J. 2008) (striking defendant's third-party defense because it did not conform with the requirements of section 107(b)(3) but granting defendant leave to properly amend the defense). For that reason, the Court grants the Government's motion as to Defendants' fourth defense and strikes that defense. However, the Court grants Defendants leave to properly amend that defense to conform with section 107(b)(3). See Racick, 270 F.R.D. at 232 ("Given the disfavored status of Rule 12(f) motions to strike defenses . . . a defendant normally is allowed leave to amend the answer.").

6

## C. Causation Defenses (Second, Third, and Fifth Affirmative Defenses)

Defendants' second, third, and fifth affirmative defenses assert additional causation defenses. Defendants' second affirmative defense states "[n]o action or omission by Defendant was the cause in fact or legal cause of any of the problem, condition, injury, cost, expense, or damage allegedly suffered by Plaintiff because Defendant was not in control of the conditions on a day-to-day basis, but rather, a third party intervened or the actions were authorized by North Carolina." (Doc. No. 18, at 24; Doc. No. 19, at 24; Doc. No. 20, at 24.) Defendants' third affirmative defense states "Plaintiff's damages, if any, were not a foreseeable result or were [not] proximately caused by any action or omission of Defendant because Defendant was authorized by permit or otherwise to demolish the buildings." (Doc. No. 18, at 24; Doc. No. 19, at 24; Doc. No. 20, at 24.) And Defendants' fifth affirmative defense states "[a]ny problem, condition, injury, cost, expense or damage allegedly suffered by Plaintiff was proximately caused by the conduct of parties other than Defendant, or by parties over whom Defendant had no control or by superseding intervening or other actions of others outside the control of Defendant, such as vandalism at the Pineville Facility." (Doc. No. 18, at 24–25; Doc. No. 19, at 24–25; Doc. No. 20, at 24–25.)

The Government argues that those causation defenses are insufficient under CERCLA. Defendants argue that those defenses invoke the third-party defense under section 107(b)(3). Those defenses, however, are insufficient as matter of law to invoke the third-party defense. With respect to the second defense, whether

7

Defendants' acts or omissions were the cause in fact or proximate cause of damage is immaterial to Defendants' liability under CERCLA. See Chevron, 596 F.3d at 131 ("The traditional tort concept of causation plays little or no role in [section 107(a)'s] liability scheme. A party seeking to establish liability under CERCLA need not even show a specific PRP's waste caused cleanup costs."). And Defendants' third and fifth defenses are insufficient as a matter of law because they fail to state that the third parties' conduct was the sole cause of the damage. See Sensient Colors, 580 F. Supp. 2d at 383 (concluding that defendant's third-party defense was insufficient where it failed to state that the third party was the sole cause of the damage and striking the defense); United States v. Fairchild Indus., Inc., 766 F. Supp. 405, 411 (D. Md. 1991) (striking affirmative defenses based on the conduct of third parties where the defenses did not conform to the language of section 107(b)(3)); United States v. Kramer, 757 F. Supp. 397, 418 (D.N.J. 1991) (striking defenses asserting that any release or resulting damages were the result of acts or omissions of third parties because they did not conform with section 107(b)(3)). Therefore, the Court grants the Government's motion as to Defendants' second, third, and fifth defenses and strikes those defenses.

### D. Due Care Defenses (Sixth and Seventh Affirmative Defenses)

Defendants' sixth and seventh affirmative defenses assert that Defendants complied with all laws and acted with due care.[1] The Government argues that those

---

[1] The sixth affirmative defense states "Defendant complied with all laws, regulations, and standards applicable to its activities because, among other things, both sites were permitted by the State of North Carolina." The seventh affirmative defense states

defenses are insufficient under CERCLA. Defendants argue that those defenses add to their third-party defense and demonstrate they acted with due care.

The third-party defense requires defendant to show that it "exercised due care with respect to the hazardous substance concerned" and "took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions." 42 U.S.C. § 9607(b)(3). But Defendants assert the third-party defense in their fourth affirmative defense. Therein, Defendants allege that they acted with due care, and the Court has granted Defendants leave to amend that defense to assert the remaining requirements of section 107(b)(3). Defendants' due care is immaterial in the absence of the other elements of the third-party defense—namely, that the release or threatened release and resulting damages were caused solely by a third party who was not in a contractual, employment, or agency relationship with Defendants. See Fairchild Indus., 766 F. Supp. at 410 (striking defendants' affirmative defenses asserting they exercised due care and complied with applicable laws); Kramer, 757 F. Supp. at 419 (same). Therefore, the Court grants the Government's motion as to Defendants' sixth and seventh defenses and strikes those defenses.

### E. Offset (Tenth Affirmative Defense)

Defendants' tenth affirmative defense states:

Should Defendant be found liable, . . . Defendant is entitled to any offset for the greater of (1) any amounts that Defendant, or any other

---

"[a]t all relevant times, Defendant acted with due care and otherwise conducted itself as a reasonable person under the circumstances with the knowledge Defendant had at the time." (Doc. No. 18, at 25; Doc. No. 19, at 25; Doc. No. 20, at 25.)

9

> predecessor, expended in conducting activities at the site, (2) any amounts actually paid by any persons or entity not a party to this action for any of the costs or damages alleged in the Complaint, and/or (3) the proportionate and equitable fair share of any such person or entity that receives a release from liability or covenant not to sue with respect to any of the relief sought in the Complaint, especially at the Pineville Site.

(Doc. No. 18, at 25; Doc. No. 19, at 25; Doc. No. 20, at 25.)

Defendants concede that the third part of their tenth defense should be stricken. (Doc. No. 31, at 8.) The second part of their tenth defense stems from section 113(f)(2), which provides that if a PRP settles its liability to the Government, such settlement reduces the potential liability of other PRPs by the amount of the settlement. 42 U.S.C. § 9613(f)(2). The second part of their tenth defense also stems from the broader notion that the Government cannot recover an amount greater than its response costs. The Government argues that such a defense is immaterial because it is only seeking its unreimbursed response costs and is not entitled to seek costs for which it has already been reimbursed.

"The Government may be correct in its contention that pleading such a defense is not necessary. But it does not automatically follow that such a pleading is prohibited. Common practice suggests it is not." Sensient Colors, 580 F. Supp. 2d at 384 (addressing defendant's affirmative defense asserting that it is entitled to an offset for any amounts paid to the Government pursuant to a settlement under CERCLA). In addition, the Government will not be prejudiced by the inclusion of that defense. See Staton, 2013 U.S. Dist. LEXIS 105599, at *5 ("A party moving to strike a defense pursuant to Rule 12(f) must make a showing of prejudice."). Therefore, the Court denies the Government's motion as to the second part of

10

Defendants' tenth defense.

As to the first part of Defendants' tenth defense, there is no legal basis that would entitle Defendants to an offset for amounts that they or their predecessors expended in conducting activities at the sites, and Defendants make no argument as to why this part of their defense should not be stricken. Therefore, the Court grants the Government's motion as to the first part of Defendants' tenth defense and strikes that defense.

### F. Apportionment (Nineteenth Affirmative Defense)

Defendants' nineteenth affirmative defense states "Defendant pleads the doctrine of Apportionment in partial or complete bar to Plaintiff's recovery against Defendant." (Doc. No. 18, at 27; Doc. No. 19, at 27; Doc. No. 20, at 27.) The Government argues that the defense fails to provide it with fair notice. Defendants argue that it adequately puts the Government on notice that to the extent there are other PRPs, Defendants intend to raise the issue of apportionment among them.

"In some circumstances a PRP may mitigate the sting of CERCLA's imposition of joint and several liability by apportionment or [contribution]. Apportionment— also known as division of damages—assigns a several share of liability to each PRP based on traditional and evolving principles of federal common law." PCS Nitrogen, 714 F.3d at 168 (citation and quotation marks omitted). "[T]he universal starting point for divisibility of harm analyses in CERCLA cases is § 433A of the Restatement (Second) of Torts." Burlington, 556 U.S. at 614 (quotation marks omitted). The Restatement provides for apportionment of damages among two or more parties when

11

"(a) there are distinct harms, or (b) there is a reasonable basis for determining the contribution of each cause to a single harm." Restatement (Second) of Torts § 433A. "Thus, PRPs can avoid joint and several liability by establishing either that onsite harms are distinct, or that there exists a reasonable basis for apportioning liability for a single harm among responsible parties." PCS Nitrogen, 714 F.3d at 181–82 (quotation marks omitted). Courts routinely decline to strike defenses based on apportionment. E.g., Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc., 217 F. Supp. 2d 1028, 1036 (C.D. Cal. 2002); Kramer, 757 F. Supp. at 422–23. Therefore, the Court concludes that Defendants' nineteenth defense gives the Government fair notice that Defendants intend to raise apportionment as a defense to joint and several liability, and the Court denies the Government's motion as to Defendants' nineteenth defense.

### G. Limited Liability (Seventeenth Affirmative Defense)

In its complaint, the Government brings four claims to recover its response costs: (1) a claim against Cone Ave to recover its response costs for the Pineville site; (2) a claim against Godley to recover its response costs for the Pineville site; (3) a claim against GNT to recover its response costs for the Statesville site; and (4) a claim against Godley to recover its response costs for the Statesville site. In its claims against Godley, the Government alleges that Godley operated the sites at the time of disposal and thus is a PRP under section 107(a). The Government also alleges that through piercing the corporate veil, Godley is personally liable for Cone Ave's and GNT's liabilities. Defendants' seventeenth affirmative defense states "Defendant

12

pleads the limited liability status of [Cone Ave] and [GNT] in partial or complete bar to Plaintiff's recovery against Defendant to the extent Plaintiff seeks recovery against Defendant personally." (Doc. No. 18, at 27; Doc. No. 19, at 27; Doc. No. 20, at 27.)

"The general rule is that in the ordinary course of business, a corporation is treated as distinct from its shareholders." State ex rel. Cooper v. Ridgeway Brands Mfg., LLC, 666 S.E.2d 107, 112 (N.C. 2008). That general rule applies equally to a limited liability company and its members. S. Shores Realty Servs. v. Miller, 796 S.E.2d 340, 351 (N.C. Ct. App. 2017). But "[p]iercing the corporate veil sets aside that general rule and allows a plaintiff to impose legal liability for a corporation's obligations, or for torts committed by the corporation, upon some other company or individual that controls and dominates a corporation." Green v. Freeman, 749 S.E.2d 262, 270 (N.C. 2013).

The Government argues that the seventeenth defense should be stricken from Cone Ave's and GNT's answers because whether their limited liability status shields Godley from personal liability is immaterial to their liability. The Court agrees and strikes Cone Ave's and GNT's seventeenth defense.

The Government argues that the seventeenth defense should be stricken from Godley's answer because it is insufficient and immaterial to his direct liability under CERCLA as an operator, and if the Court pierces the corporate veil, the companies' limited liability status will not shield Godley from being personally liable for the companies' liabilities. While that may be true, the opposite is also true—if the Court does not pierce the corporate veil, then the companies' limited liability status will

13

shield Godley from being personally liable for the companies' liabilities. Therefore, the Court denies the Government's motion as to Godley's seventeenth defense.

### H. Failure to State a Claim (First Affirmative Defense)

Defendants' first affirmative defense asserts that the complaint fails to state a claim on which relief can be granted. (Doc. No. 18, at 24; Doc. No. 19, at 24; Doc. No. 20, at 24.) The Government argues that the defense should be stricken because the complaint states a valid claim.

Under Local Rule 7.1(c)(1), motions to dismiss in answers to complaints are deemed to be made merely to preserve the issue and will not be addressed by the court. The inclusion of the defense does not prejudice the Government in any way. Therefore, the Court denies the Government's motion as to Defendants' first affirmative defense.

### I. Conceded Defenses (Eighth, Eleventh, Twelfth, Thirteenth, Sixteenth, Eighteenth, and Twentieth Affirmative Defenses)

In their response brief, Defendants concede that their eighth, eleventh, twelfth, thirteenth, sixteenth, eighteenth, and twentieth affirmative defenses should be stricken. (Doc. No. 31, at 7–10.) Therefore, the Court grants the Government's motion as to those defenses and strikes the same.

### J. Jury Demand

The Government moves to strike Defendants' jury demand, contending that Defendants are not entitled to a jury trial.

Rule 39(a)(2) provides that all issues so demanded must be tried by jury unless "the court, on motion or on its own, finds that on some or all of those issues there is

14

no federal right to a jury trial." Fed. R. Civ. P. 39(a)(2). A demand for a jury trial is justified if either there is a statutory right to a jury trial or a constitutional right to a jury trial under the Seventh Amendment. Lamberty v. Premier Millwork & Lumber Co., 329 F. Supp. 2d 737, 744 (E.D. Va. 2004). As CERCLA does not provide a statutory right to a jury trial, the Court must determine whether the Seventh Amendment provides a right to a jury trial on the Government's claims. Id.

The Seventh Amendment preserves the right to a jury trial "for 'Suits at common law, where the value in controversy shall exceed twenty dollars.' The phrase 'Suits at common law' refers to actions involving the determination of legal, rather than equitable, rights and remedies." Id. To determine whether a Seventh Amendment right to a jury trial exists, "the court examines both (1) the nature of the issues involved, to determine if they would have historically been brought in a court of law or a court of equity, and (2) the remedy sought, to determine whether it is legal or equitable in nature." Termini v. Life Ins. Co. of N. Am., 474 F. Supp. 2d 775, 777 (E.D. Va. 2007) (quotation marks omitted).

Numerous courts have held that there is no Seventh Amendment right to a jury trial on a CERCLA action to recover response costs because the action is equitable in nature, seeking the remedy of restitution, and Defendants do not contend otherwise. Hatco Corp. v. W.R. Grace & Co., 59 F.3d 400, 412 (3d Cir. 1995); United States v. Ward, 618 F. Supp. 884, 913 (E.D.N.C. 1985). Defendants argue, however, that they are entitled to a jury trial on the issue of piercing the corporate veil.

Federal courts agree that "the doctrine of piercing the corporate veil has roots

15

in both courts of law and equity." Int'l Fin. Servs. Corp. v. Chromas Techs. Can., Inc., 356 F.3d 731, 736 (7th Cir. 2004); Wm. Passalacqua Builders v. Resnick Developer S., Inc., 933 F.2d 131, 135 (2d Cir. 1991). There is a circuit split, however, as to whether piercing the corporate veil is legal or equitable in nature. In Passalacqua, the Second Circuit held that the relief sought through piercing the corporate veil is legal because plaintiffs sought to hold defendants liable for money damages, which is typically achieved in an action at law. Passalacqua, 933 F.2d at 136. The Second Circuit thus concluded that it was proper for the district court to submit the veil-piercing issue to the jury. Id. Conversely, in International Financial, the Seventh Circuit held that piercing the corporate veil is an equitable remedy on which there is no right to a jury trial. Int'l Fin., 356 F.3d at 737. The Seventh Circuit's decision, however, was a function of Illinois law. The Seventh Circuit explained that under Illinois law, piercing the corporate veil "is available only where failing to provide such relief would promote injustice or inequity." Id. In addition, the Seventh Circuit found it significant that piercing the corporate veil under Illinois law is a matter of the trial court's discretion, noting that equitable relief is traditionally discretionary whereas legal relief is not. Id. at 736–37. For those reasons, the Seventh Circuit concluded that there is no right to a jury trial on the issue of piercing the corporate veil. Id. at 737. The Seventh Circuit expressly recognized, however, that "this conclusion might not be reached under the law of another state." Id.

North Carolina law regarding piercing the corporate veil leads to the conclusion reached by the Second Circuit rather than that reached by the Seventh

16

Circuit. Under North Carolina law, piercing the corporate veil is not a matter of discretion, and the aggrieved party must make the requisite factual showing—that (1) defendant had complete domination and control over the company such that the company had no separate mind, will, or existence of its own, (2) such control was used by defendant to commit a fraud or wrong or to perpetrate a violation of a statutory or other legal duty, and (3) such control and breach of duty proximately caused plaintiff's injury. Glenn v. Wagner, 329 S.E.2d 326, 330 (N.C. 1985). Under North Carolina law, "[t]he doctrine of piercing the corporate veil is not a theory of liability. Rather, it provides an avenue to pursue legal claims against corporate officers or directors who would otherwise be shielded by the corporate form." Green, 749 S.E.2d at 271. This is consistent with the Government's attempt to pierce the corporate veil here— the Government seeks to hold Godley liable for money damages that the corporate shield would otherwise protect him from. Accordingly, the Court concludes that the reasoning of the Second Circuit is more applicable to this case and likewise concludes that in seeking to pierce the corporate veil, the Government seeks a remedy that is legal in nature. As a result, Defendants are entitled to a jury trial on the issue of piercing the corporate veil. Passalacqua, 933 F.2d at 136; see also Pfohl Bros. Landfill Site Steering Comm. v. Allied Waste Sys., 255 F. Supp. 2d 134, 179 (W.D.N.Y. 2002) (stating that the issue of piercing the corporate veil is normally submitted to a jury where plaintiff sought to pierce the corporate veil in a CERCLA action but concluding there was no genuine dispute of material fact); G-I Holdings, Inc. v. Bennet, 380 F. Supp. 2d 469, 478 (D.N.J. 2005) (concluding that defendants were entitled to a jury

trial on the issue of piercing the corporate veil and denying plaintiffs' motion to strike defendants' jury demand); Perpetual Real Estate Servs., Inc. v. Michaelson Props., Inc., 775 F. Supp. 893, 895 (E.D. Va. 1991) (stating that the issue of piercing the corporate veil is for the jury), reversed on other grounds, 974 F.2d 545 (4th Cir. 1992). Therefore, the Court denies the Government's motion to strike Defendants' jury demand.

IV. CONCLUSION

**IT IS THEREFORE ORDERED** that the Government's motion to strike, (Doc. No. 25), is **GRANTED in part** and **DENIED in part**:

1. The motion is **GRANTED** as to Defendants' fourth affirmative defense, and that defense is **STRICKEN**. Defendants are granted leave to amend that defense to properly assert the third-party defense;

2. The motion is **GRANTED** as to parts one and three of Defendants' tenth affirmative defense, and that defense is **STRICKEN**. The motion is **DENIED** as to part two of Defendants' tenth affirmative defense;

3. The motion is **GRANTED** as to Cone Ave's and GNT's seventeenth affirmative defense, and that defense is **STRICKEN** from Cone Ave's and GNT's amended answers. The motion is **DENIED** as to Godley's seventeenth affirmative defense;

4. The motion is **GRANTED** as to Defendants' second, third, fifth, sixth, seventh, eighth, eleventh, twelfth, thirteenth, sixteenth, eighteenth, and twentieth affirmative defenses, and those defenses are **STRICKEN**;

18

and

5. The motion is **DENIED** as to Defendants' first and nineteenth affirmative defenses and Defendants' jury demand.

Signed: August 5, 2020

Robert J. Conrad, Jr.
United States District Judge